**WORK, Secretary of the Interior, v. BRAFFET.**

Court of Appeals of District of Columbia.
Submitted February 9, 1927. Decided
April 4, 1927.

No. 4528.

**1. Public lands ☞52—Known mineral land does not pass under school land grant.**

It is settled law that known mineral land does not pass to a state by a school land grant.

**2. Public lands ☞32—On compliance with public land law and recording of entry, entryman is vested with presumptive title.**

After a citizen has submitted required proof of compliance with public land law and his entry has been placed of record, he is vested with a presumptive title to the land, which precludes allowance of any other claim so long as his entry remains intact.

**3. Mines and minerals ☞38(15)—Applicant for purchase of coal lands, opposed by state and claimant under school land grant, held entitled to mandatory injunction requiring issue of patent after prima facie showing, not rebutted, that lands were known coal lands at time of grant (Comp. St. § 4659; Leasing Act, § 2 [Comp. St. § 4640¼a]).**

Where rights of applicant for purchase of coal lands under Rev. St. § 2347 (Comp. St. § 4659), were opposed by the state on the ground that such lands were part of school land grants, and by coal company claimant under patent from the state, and where state, after holding of Secretary of the Interior that applicant had prima facie established that the lands were known coal lands at the time of the school grant, and hence did not pass to the state, withdrew its claim, instead of adducing evidence to overcome claimant's prima facie case, and where coal company attempted to release its claim to the United States and take in its place a lease issued under Leasing Act Feb. 25, 1920, § 2 (Comp. St. § 4640¼a), held, applicant for purchase, or his administrator, was entitled to mandatory injunction requiring Secretary of the Interior to issue patent to him.

**4. Mines and minerals ☞5—Coal land lease, obtained by company, releasing invalid claim of title, held not to affect vested rights of adverse claimant (Leasing Act § 2 [Comp. St. § 4640¼a]).**

Where coal company, claiming coal lands under grant from state, which claimed under school land grant, after prima facie showing by adverse claimant that such lands were known mineral lands at the time of the school grant, and hence not included therein, obtained lease of such lands from the government under Leasing Act Feb. 25, 1920, particularly section 2 (Comp. St. § 4640¼a), authorizing Secretary of the Interior to recognize equitable rights of persons claiming land in good faith in awarding leases, held, lease so obtained did not affect vested rights of adverse claimant, who was entitled to issuance of patent.

**5. Mines and minerals ☞5—Provision of Leasing Act authorizing recognition of rights of claimants applies only to contesting applicants for lease (Leasing Act, § 2 [Comp. St. § 4640¼a]).**

Leasing Act Feb. 25, 1920, § 2 (Comp. St. § 4640¼a), authorizing Secretary of the Interior to recognize equitable rights of persons claiming land in good faith in awarding coal land leases, applies only to contesting applicants for lease.

**6. Mines and minerals ☞38(4)—Coal company, claiming under lease from government, held not indispensable party to adverse claimant's suit to compel issuance of patent (Leasing Act [Comp. St. §§ 4640¼–§ 4640¼a]).**

Coal company, holding lease to coal lands under Leasing Act Feb. 25, 1920 (Comp. St. §§ 4640¼–4640¼ss), held not an indispensable party to suit by an adverse claimant, or his administrator, under prior application to purchase to compel issuance of patent by Secretary of the Interior.

**7. Mines and minerals ☞38(4)—United States held not indispensable party to suit to compel issuance of patent for coal lands (Comp. St. § 4659).**

The United States is not an indispensable party to suit by claimant of coal lands under application for purchase made under Rev. St. § 2347 (Comp. St. § 4659), to compel Secretary of Interior to issue patent.

Appeal from Supreme Court of District of Columbia.

Suit by Robert I. Braffet, administrator of the estate of Mark P. Braffet, deceased, against Hubert Work, as Secretary of the Interior. Decree for plaintiff, and defendant appeals. Reversed and remanded for modification.

O. H. Graves, of Washington, D. C., for appellant.

Edmund Burke, J. G. Jaeger, and S. H. Rourke, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from a mandatory injunction issued by the Supreme Court of the District of Columbia, directing Hubert Work, Secretary of the Interior, to issue a patent to the above-named appellee, Robert I. Braffet, administrator of the estate of Mark P. Braffet, deceased, to certain coal lands situated in the state of Utah.

It appears that Mark P. Braffet, a citizen of the United States, on the 4th day of February, 1918, applied to the officials of the local

land office at Salt Lake City, Utah, to purchase as coal land, under section 2347, R. S. (Comp. St. § 4659), the S. E. ¼ of section 32, township 12 south, range 10 east S. L. M.; that on the 13th day of August, 1918, the state of Utah intervened and contested the application, on the ground that at the time the school land grant was made to Utah, under the Enabling Act of July 16, 1894 (28 Stat. 107), the lands in question were not known to be coal lands, and that accordingly at that time title to the said lands vested in the state of Utah.

At about the same time, the Pleasant Valley Coal Company, hereafter for convenience referred to as the Coal Company, a Utah corporation, intervened in said application on the ground that it held title in fee to said lands under a patent from the state of Utah, alleging that the lands were agricultural only in character, and claimed by the state of Utah under the Enabling Act. The contest proceeded in the local land office, and at the conclusion of appellee's proof the state of Utah moved to dismiss the application, which motion was granted. Appellee appealed to the Commissioner of the General Land Office, where the decision of the local land office was reversed; the Commissioner sustaining the application as valid and holding that appellee was entitled to complete his purchase.

The state of Utah and the Coal Company appealed to the Secretary of the Interior, who reversed the Commissioner, holding that Braffet had prima facie established that the lands were known coal lands at the time of the grant to Utah, but that his application could not be approved, since the presumptive title to the lands was in the state. The Secretary held that the motion to dismiss was erroneous, and remanded the case to the local land office, directing that the state of Utah be permitted to produce further proof, and permitting Braffet, as the "contestant," to continue as such against the claims of Utah.

It is alleged in the answer, which for the purposes of this case must be taken as true, since the case was tried on bill and answer, that subsequent to the decision of the Secretary on July 31, 1922, Braffet and the Coal Company filed motions for rehearing, which were denied. Braffet then petitioned the Secretary for the exercise of supervisory authority, which was denied on December 28, 1922. On that day the state of Utah, through its Attorney General, executed a withdrawal and prayed for a dismissal of its protest, without prejudice, however, to the interests of the Coal Company, alleging that it has no beneficial interest in the land, since on or about

May 14, 1902, it had issued a patent therefor to one Laura Bird, who subsequently conveyed the lands to the Pleasant Valley Coal Company.

It is further alleged in the answer that on or about August 3, 1921, the United States, through the Secretary of the Interior, issued a lease to the Coal Company under the Leasing Act of February 25, 1920 (41 Stat. 437 [Comp. St. §§ 4640¼–4640¼ss]), for certain lands adjoining and in the vicinity of section 32, and on March 2, 1923, the Coal Company filed with the Secretary of the Interior an application for modification of its lease, so as to include therein all of section 32, offering therein to waive its claim to the legal title to said land and to take a coal land lease for the same, conditioning its waiver, however, upon the granting of the modified lease. The Secretary accordingly directed the Commissioner of the General Land Office to modify the lease of the Coal Company as requested, basing his action upon section 2 of the Act of February 25, 1920 (section 4640¼a), authorizing him, in awarding coal land leases, to recognize equitable rights of persons who claim such land in good faith.

It is clear that this case must stand or fall upon the conditions existing on February 4, 1918, the date when Braffet filed his application for the purchase of the lands in question with the register of the local land office at Salt Lake City. This application was filed under the provisions of section 2347, R. S. U. S., as follows: "Every person above the age of twenty-one years, who is a citizen of the United States, or who has declared his intention to become such, or any association of persons severally qualified as above, shall, upon application to the register of the proper land office, have the right to enter, by legal subdivisions, any quantity of vacant coal lands of the United States not otherwise appropriated or reserved by competent authority, not exceeding one hundred and sixty acres to such individual person, or three hundred and twenty acres to such association, upon payment to the receiver of not less than ten dollars per acre for such lands, where the same shall be situated more than fifteen miles from any completed railroad, and not less than twenty dollars per acre for such lands as shall be within fifteen miles of such road."

[1] The sole question to be determined is whether or not, at the date Braffet filed his application, the lands in question were vacant coal lands of the United States. That they were vacant coal lands on that date is settled by the decision of the Secretary, and the con-

cession of the intervening claimants, the state of Utah and the Coal Company. The Secretary committed error, after finding on the original appeal that Braffet had prima facie established that the lands were known coal lands on the date of the grant to Utah, in holding that a presumptive title was acquired by the state of Utah through the grant, which entitled the state to rebut Braffet's prima facie case, since it is settled law that known mineral land does not pass to the state by a school land grant.

In United States v. Sweet, 245 U. S. 563, 38 S. Ct. 193, 62 L. Ed. 473, Mr. Justice Van Devanter, considering the question of whether known mineral lands passed to the state of Utah under its grant of school lands, said: "Another statute indicative of the policy of Congress and pertinent to the present inquiry is the Act of February 28, 1891, c. 384, 26 Stat. 796, which defines the indemnity to which a state or territory is entitled in respect of its school grant. In addition to dealing with deficiencies occurring in other ways, it provides: 'And other lands of equal acreage are also hereby appropriated and granted, and may be selected by said state or territory where sections sixteen or thirty-six are mineral land.' In this there is a plain implication that where those sections are mineral—known to be so when the grant takes effect—they do not pass under the grant. And it does not militate against this implication that under another provision the state may surrender those sections and take other lands in lieu of them, where, although not known to be mineral when the grant takes effect, they are afterwards discovered to be so."

This would seem to dispose of presumptive title, or any other sort of title, to known mineral land passing with the grant to the state; but in the present case we do not deem it important to consider the question of whether the presumptive title existed in the state or not. It may be suggested parenthetically that an established practice has grown up in the Land Department to the effect that, where an application for the purchase of coal lands is made on school numbered sections, the applicant is given the status of a contestant, with the burden upon him to establish that the lands were known coal lands at the date of the grant; the state in each instance being the contestee. This being an established practice of the Land Department, the courts would not feel inclined, by extraordinary process, to disturb a construction thus placed upon the land law and consistently adhered to by the department through a long period of time,

and upon the faith of which vested rights have been acquired and large expenditures made.

But that rule has no application here, since the contestee, the state, after being given an opportunity to produce testimony to defeat Braffet's prima facie case, voluntarily withdrew from the contest, thus surrendering any rights it may have had thereunder as contestee.

[2] This leaves the case, however, subject to another rule of practice recognized by the department in cases where the application for entry or purchase is subject to contest. After a citizen has submitted required proof of compliance with the public land law and his entry has been placed of record, he is vested with a presumptive title to the land—a title such as precludes allowance of any other claim so long as his entry remains intact. The title of the entryman is not absolute, however, but it is still subject to investigation and scrutiny, and, if found for any reason to be invalid, it is liable to cancellation. But cancellation cannot emanate from thin air. It must rest upon a valid foundation, since the very existence of the entry segregates the land from the mass of the public domain, and a lawful reason must exist before an entryman can be deprived of his right.

[3] Thus it will be observed that by the rule of practice established in the department, and indeed by the law as announced by the courts in many cases, the moment that Braffet's application for purchase was placed of record in the local land office, he acquired an interest that could not be divested in favor of any other claim so long as his entry remained intact. It was in that condition when the Secretary ordered the case remanded to the local land office. Hence it appears that, under that theory of the case, the state and the Coal Company, by their failure to further contest Braffet's claim, removed the only obstacle to the allowance of his application. By his submission of prima facie proof to the satisfaction of the Land Department that the lands were known coal land at the date of the grant to the state, and the failure of the state to rebut that proof, his application became complete, and upon payment of the price he is entitled to a patent.

[4] But it is sought to sustain this case on the lease subsequently executed to the Coal Company, on the theory that under section 2 of the Leasing Act, after stating the conditions under which the Secretary may lease mineral lands, the act provides: "That the Secretary is hereby authorized, in awarding leases for coal lands heretofore improved and occupied

or claimed in good faith, to consider and recognize equitable rights of such occupants or claimants."

The only right which the Coal Company could assert on the date that Braffet applied to purchase was through its alleged title deraigned from the state of Utah. If Utah had no title, equitable or legal, it is difficult to understand where any equitable or legal right existed in the Coal Company; neither was such equitable right created by the surrender of its claims to the United States as a condition for the execution of the lease. The Secretary of the Interior has no power to barter leases in this way; nor could the right of Braffet, which had become vested by the abandonment of the contest by the state and the Coal Company, be defeated in this manner.

[5] The above provision of the Leasing Act, however, applies only to contesting applicants for a lease. Braffet was not an applicant for a lease, but was relying upon his right acquired long prior to the passage of the Leasing Act. With this valid right existing, no power inhered in the Secretary to lease the lands to anybody or under any conditions. Therefore the provision of the act in question has no application whatever to this case.

[6] This disposes of the further assignment of error to the effect that the Coal Company is an indispensable party to this suit. The Coal Company acquired no rights either through the state of Utah or through its lease that could in any way impair the right of Braffet acquired through the filing of his application to purchase. His case in the department and here must stand or fall upon the validity of that application. If the lands in question were vacant coal lands of the United States when the application was filed, then Braffet's right to complete his purchase cannot be assailed. That the lands were vacant coal lands, has been determined by the decision of the Secretary in the original appeal (State of Utah v. Braffet, 49 Land Dec. 212), as follows: "From a careful consideration of the evidence, the department finds that the coal applicant has established prima facie that the land was known coal land on January 4, 1896; that the Commissioner's finding in this respect was correct; and that the register and receiver erred in sustaining the motion to dismiss."

The finality of the decision was accepted by the state, not only by its refusal to submit further proof as to the character of the lands at the date of the grant, but by its withdrawal from the case and surrender of all title or interest in the lands. The Coal Company likewise recognized its finality by surrendering its alleged title in the lands to the United States and accepting in lieu thereof the lease. As before suggested, however, the Coal Company, which relied solely upon its title through deraignment from the state, is in no better position than its alleged grantor, and Braffet's rights cannot be divested by the makeshift of the lease.

It may be suggested, however, that the position here assumed by the Secretary and the Coal Company is highly inconsistent, since as a condition precedent to the execution of any sort of a pretended lease the Secretary must have relied upon his finding that the lands were known coal lands on the date of the grant to the state, and upon the further admission of that fact by the Coal Company. This concession by both parties to the lease, based upon the final judgment of the Secretary in the original appeal, gave the lands the status of vacant coal lands on the date Braffet filed his application to purchase.

[7] Nor is the assignment of error to the effect that the United States is an indispensable party to this suit well founded. What is here sought to be accomplished is to compel the Secretary to perform the mere ministerial act of recognizing the validity of Braffet's application, and permitting him, or in this case his administrator, to complete the purchase and to issue a patent therefor.

It is sought to make the United States an indispensable party through the injection into this case of the lease with the Coal Company. The lease and the Leasing Act have nothing whatever to do with this case. The rights of Braffet were recognized by the acceptance and record of the application in the local land office, and became established by the decision of the Secretary in the original appeal and the abandonment of the contest by the state of Utah. The proceedings following that by the Secretary had no effect whatever upon the rights already acquired by Braffet.

The decree entered herein, among other things, enjoins the Secretary "to vacate and set aside the decision of the Department of the Interior of July 31, 1922, referred to in the amended bill of complaint, and in all respects to affirm the prior decision of the Commissioner of the General Land Office." This portion of the decree, if essential in this case, would be beyond the jurisdiction of the court, as it would amount to the control by extraordinary remedy of the discretion of the Secretary in a matter in which he was compelled by law to act. But, for the reasons we have set forth in this opinion, the portion of the

decision of the Secretary finding that Braffet's proof established that the lands in question were known coal lands on the date of the grant to the state, and the subsequent failure of the state to further contest the case, made that finding final, and in that respect, which is the only material part for the purposes of this case, the decision of the Commissioner of the General Land Office was affirmed.

We therefore direct the modification of the decree below to a decree enjoining the Secretary to recognize the application as valid, to permit the administrator of Braffet to complete the purchase, and to cause to be issued to him a patent for said lands. The decree is reversed, without costs, and the cause is remanded for modification of the decree in accordance with the views expressed herein.